UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,
    Plaintiff,
    v.
UBER TECHNOLOGIES, INC.,
    Defendant.

Case No. 17-cv-00950-WHO

**ORDER GRANTING MOTION TO TRANSFER**

Re: Dkt. No. 21

## INTRODUCTION

Plaintiff Jane Doe[1] brings this tort suit against defendant Uber Technologies, Inc. ("Uber") based upon an alleged sexual assault perpetrated against her by an Uber driver in Minnesota in August 2016. Uber moves to transfer venue to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). Because the majority of the evidence and key third party witnesses are in Minnesota, and Minnesota's local interest in deciding this controversy is substantially stronger than California's, the case should be tried there. I GRANT Uber's motion.

## BACKGROUND

Uber is a "transportation network company" incorporated in Delaware and headquartered in San Francisco, California. Complaint ("Compl.") (Dkt. No. 1) ¶ 6. Since its inception in 2010, Uber has grown into a multi-billion dollar enterprise with operations in approximately 555 cities worldwide. *Id*. ¶¶ 3, 6.

In 2014, Uber had more than 160,000 regularly active drivers and the company estimated in October 2016 that it provides transportation services to 40 million active riders monthly. *Id*. ¶ 10. It provides a downloadable smartphone application ("App") that connects individuals in need of a ride with drivers who transport passengers in their own personal vehicles. *Id*. ¶ 11. Individuals use the App to request a ride, and are then paired with an available Uber driver who picks the rider up and drives them to their destination. *Id*. Customers pay Uber for each ride with

---

[1] I previously granted plaintiff's application to proceed using the pseudonym "Jane Doe." Dkt. No. 23.

a credit card through the App. *Id.* Uber sets fare prices for rides without driver input, collects the rider's credit card payment, pays the driver a portion of the collected fare, and keeps the remainder. *Id.* ¶¶ 11, 34.

To meet rider demand, "Uber solicits and retains tens of thousands of non-professional drivers" to provide transportation services through the App. *Id.* ¶ 12. It has "minimum requirements" to be a driver, requiring that all drivers be over 21 years old and have a valid U.S. driver's license, an eligible four-door vehicle, and at least one year of experience driving in the U.S. *Id.* ¶ 29. Prospective Uber drivers apply entirely online by "filling out a few short forms and uploading photos of a driver's license, vehicle registration, and proof of insurance." *Id.* ¶ 43. Uber does not verify that the information provided by applicants is complete or accurate, or that "the documents submitted are accurate or actually pertain to the applicant." *Id.* ¶¶ 43, 50. It generally uses third party vendors to conduct background checks on applicants. *Id.* ¶ 50. These vendors run the drivers' social security numbers through databases that, according to plaintiff, capture information only dating back seven years and do not capture all arrests or convictions. *Id.* Drivers hired by Uber then become "available to the public to provide transportation services through [the] App." *Id.* ¶ 12.

Uber markets itself as a better and safer alternative to taxis and advertises its services as the "safest ride on the road" and "a ride you can trust." *Id.* ¶¶ 64-65. It emphasizes its "focus on rider safety before during and after every trip," and represents to customers that "[e]very ridesharing and livery driver is thoroughly screened through a rigorous process we've developed using industry-leading standards. This includes a three step criminal background screening for the U.S.—with country, federal and multi-state checks that go back as far as the law allows—and ongoing reviews of drivers' motor vehicle records throughout their time on Uber." *Id.* ¶¶ 70-71. Its advertisements target the market of intoxicated late night riders, particularly women. *Id.* ¶ 76. Uber's website and marketing platforms display "numerous pictures of smiling women entering and exiting vehicles, who are meant to appear 'safe.'" *Id.* ¶ 79.

Jane Doe resides in Roseville, Minnesota. She began using Uber in 2013. *Id.* ¶¶ 83-84. In choosing to use Uber, she relied on Uber's advertisements representing that Uber is "a safe and

reliable option for female passengers." *Id*. ¶¶ 84-86.

On August 5, 2016, Doe and her two friends used the Uber App to request a ride to a brewery in Minneapolis, Minnesota. *Id*. ¶¶ 87, 89. Uber driver Abdel Jaquez picked them up and drove them to the brewery. *Id*. ¶ 89. At the end of the fourteen-minute ride, Jaquez exchanged phone numbers with the women so they could request an Uber ride to their next destination later that night. *Id*.

After eating and drinking at the brewery, Doe and her friends contacted Jaquez to request transport to a second bar in Minneapolis. *Id*. ¶ 90. Jaquez drove Doe and one friend to the second bar. "It was their understanding that Uber was continuing to charge them for this second ride via the Uber App," and that "Jaquez continued to act as an Uber employee, on the clock." *Id*. Doe sat in the passenger seat during the ride, and played music on her phone through the vehicle's auxiliary cord. *Id*. ¶ 91.

As Doe exited Jaquez's car at the second bar, she realized that she had left her phone in his car, and went back to retrieve it while her friend went ahead into the bar. *Id*. When Doe returned to Jaquez's car, he attempted to kiss her. She told him that she was not interested. *Id*. ¶ 92. Jaquez told her to "shut the [profanity] door," and accelerated forward while Doe was still partially in the car. *Id*. Jaquez drove to an isolated stretch of road at the end of the block, where he "climbed on top of [] Doe, forcibly kissing and groping her," and "gained access to and assaulted her breasts." *Id*. Doe was shocked and terrified, and "kept repeating: 'Please let me go. I don't want to do this.'" *Id.* She managed to escape from the car and ran back to the bar where she immediately told her friends that "the Uber driver had attempted to rape her." *Id*. ¶ 93. Doe had "visible bite marks to her lip, scratches and bruising to her arm, and a button missing from her shirt." *Id*. ¶ 95. She reported the sexual assault to both the police and Uber. *Id*. ¶ 97. Since the incident, Doe has received treatment from a therapist for "anxiety, depression, feelings of guilt, and suicidal ideation resulting from the sexual assault." *Id*. ¶ 96.

According to Doe, Jaquez "had a record of moving violations" and "a prior criminal record of a sexual crime against another woman." *Id*. ¶ 88. Doe alleges that "a detailed fingerprint-based background check of the type conducted regularly within the taxi industry" would have revealed

3

Jaquez's criminal history. *Id.* At the time she filed her complaint, Jaquez was allegedly still "an authorized Uber driver." *Id.* ¶ 97.

On February 23, 2017, Doe filed this action against Uber.[2] Dkt. No. 1. She asserts seven claims for relief: (1) Negligence (negligent hiring, negligent supervision, and negligent retention); (2) Fraud (intentional misrepresentation, concealment, and false promise); (3) Negligent Misrepresentation; (4) Battery; (5) Assault; (6) False Imprisonment; and (7) Intentional Infliction of Emotional Distress. *See* Compl. ¶¶ 108-156. Doe brings claims four through seven under a theory of respondeat superior. *See id.* ¶¶ 125-156. Doe seeks non-economic, economic, punitive, and exemplary damages, attorneys' fees and costs, and pre- and post-judgment interest.

Uber now moves to transfer venue to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). Uber Mot. to Transfer ("Mot.") (Dkt. No. 21-1). It contends that transfer is appropriate because the relevant facts all arose either in Minneapolis—where the alleged assault took place and evidence regarding that assault and any damage to plaintiff is located—or in Chicago, from where Uber runs its Minneapolis operations. Reply (Dkt. No. 30) at 4. Doe opposes transfer. Opposition ("Oppo.") (Dkt. No. 29).[3]

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) "requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favors transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks omitted). A "district court has discretion to adjudicate motions for transfer according to an individualized,

---

[2] Doe has not named Jaquez as a defendant in this action.

[3] In support of her Opposition, Doe requests that I take judicial notice of the existence of various lawsuits filed by and against Uber in the Northern District, as well as the positions taken by Uber with respect to venue therein. Request for Judicial Notice ("RJN") (Dkt No. 28). Uber did not oppose Doe's request and that request is GRANTED.

4

1  case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations marks and citation omitted).

Under the convenience inquiry, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The defendant must point to, and the court must weigh, "private and public interest factors affecting the convenience of the forum." *Id.* Courts in this district generally consider the following eight factors:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time [to] trial in each forum.

*Gerin v. Aegon USA, Inc.*, No. 06-cv-005407-SBA, 2007 WL 1033472, at *4 (N.D. Cal. Apr. 4, 2007) (citing *Jones*, 211 F.3d at 498-99); *accord Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

## DISCUSSION

Venue is proper in both this District and the District of Minnesota.[4] Uber argues that this action should be transferred to the District of Minnesota because the events underlying Doe's claims arose entirely in Minnesota, Doe and Jaquez both reside in Minnesota, and all potential witnesses to the alleged assault are located in Minnesota. Doe opposes transfer, asserting that because Uber's corporate conduct and policies that plaintiff alleges emanated from Uber's corporate headquarters in San Francisco, California – including its marketing, advertising, hiring, and background checks – the case should stay here. As discussed below, to prevail in this case Doe must first prove that an assault took place. All of the relevant witnesses to that event, and to Doe's subsequent actions and damages, are located in Minnesota. Uber has shown that the

---

[4] The parties do not dispute that this action could have been brought in the District of Minnesota. The District of Minnesota has personal jurisdiction over Uber and venue in that district is appropriate. *See* 28 U.S.C. § 1391(b)(1)-(3).

5

applicable private and public interest factors strongly favor transfer.[5]

## I. ANALYSIS OF RELEVANT FACTORS

### A. Plaintiff's Choice of Forum

There is ordinarily a strong presumption in favor of plaintiff's choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265-66 (1981); *see also Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). However, "the degree to which courts defer to the plaintiff's choice of forum is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (internal quotation marks and citation omitted); *see also Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (stating that "the district court correctly acted on Ninth Circuit authority in granting Plaintiffs' choice of Hawaii as a forum less deference" where none of the plaintiffs were Hawaii residents). "As deference to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *Jaco Envtl. Inc. v. Appliance Recycling Centers of Am., Inc.*, No. C 06-06601JSW, 2007 WL 951274, at *3 (N.D. Cal. Mar. 27, 2007).

The disputed facts at issue in this case all arose in Minnesota. Doe is a resident of Roseville, Minnesota, and has no personal connection to this District. Compl. ¶ 7. In addition, while this District has a connection to the corporate activities alleged in the Complaint, that connection is not particularly significant with respect to the *disputed* facts.[6] Accordingly, the deference I would ordinarily give Doe's choice of forum is substantially reduced.

Uber contends that "the overwhelming center of gravity in this case is Minnesota"—where the alleged assault and battery occurred—and that Doe's "ability to recover for [her] claims hinges on proving the alleged sexual assault." Mot. at 3. Doe responds that "[t]he core disputes in this

---

[5] The sixth factor—feasibility of consolidation of other claims—is not relevant in this case and I therefore do not consider it.

[6] For example, there should be little dispute over what Uber policies were in place and what advertising occurred during the relevant time frame.

6

case hinge on questions of [Uber's] corporate misconduct and fraud, not on whether Plaintiff was actually assaulted or whether that assault caused her injury," and argues that "the nucleus of this action is in San Francisco, where Uber's fraudulent conduct, marketing, hiring, background checks, and supervision took place."[7] Oppo. at 5, 13. Doe's argument is unconvincing because she cannot recover damages without first establishing that Jaquez assaulted and battered her. None of the percipient witnesses or evidence relating to the alleged assault are located in this District; Jaquez, Doe's friends who were with her the night of the alleged assault, the employees and customers of the two bars Doe visited, Doe's treating physicians, and the police officers to whom she reported the assault are all located in Minnesota. The District of Minnesota therefore has a much more significant connection to the disputed facts than the Northern District of California.[8]

Both parties accuse each other of forum shopping, which if shown can undercut or strengthen deference due to a plaintiff's choice of forum. Uber alleges that Doe filed in this District in order to take advantage of a favorable respondeat superior ruling in a different Northern District case; and Doe alleges that Uber is trying to avoid the same when it has otherwise filed affirmative litigation and not objected to defensive litigation here in its "home" forum. *See* Oppo. at 5; Reply at 2. I do not find these allegations of forum shopping persuasive on either score.

In sum, I find that Doe's choice of forum deserves only minimal deference because she is not a resident of this District and the significant and disputed events giving rise to this action did not occur here.

---

[7] According to Doe, her complaint presents the following issues for resolution: (1) whether Uber is a common carrier; (2) whether Uber drivers are employees of Uber; (3) whether Uber negligently screened, hired, trained, and retained its drivers; (4) whether Uber deceptively markets itself as a safer alternative to taxis; (5) whether Uber targeted its deceptive marketing at intoxicated women; (6) whether Uber's deception was fraudulent and intentional; (7) whether Doe relied on Uber's deceptive marketing in riding with Uber; (8) whether an adequate background would have revealed Jaquez's criminal background; (9) whether Jaquez assaulted Doe; and (10) the extent of Doe's damages. Oppo. at 6.

[8] Uber also argues, but does not submit any evidence in support, that its employees who were involved in operations and marketing in Minnesota work out of Uber's Chicago office. Reply at 4-5.

## B. Convenience of the Parties

"Courts will consider the relative convenience to all the parties involved in the lawsuit of the competing fora when deciding a motion to transfer." *Flexible Funding, LLC v. Iron Mountain Info. Mgmt.*, No. 05-02082, 2005 WL 2431241, at *3 (N.D. Cal. Sept. 30, 2005). Uber argues that transferring this action to Minnesota would be more convenient for Doe because it would reduce her travel time and costs. Mot. at 6.[9] Uber also argues that "the Uber representative(s) who will likely be a witness for Uber on its relationship (if any) with the driver involved, Minnesota operations, and marketing relevant to Minnesota," are located in Chicago, not California. Reply at 4-5. But, as noted above, Uber fails to submit a declaration establishing this.[10]

Doe concedes that she is "the party who would be most inconvenienced by a California forum." Oppo. at 7. However, because Doe is willing to forego her own convenience and there is no evidentiary basis for Uber's argument that Minnesota would be more convenient for it, this factor is neutral in the analysis.

## C. Convenience of the Third-Party Witnesses

"The convenience of witnesses is often the most important factor in resolving a motion to transfer. The trial court looks at who the witnesses are, where they are located, and the relevance of their testimony." *Bunker v. Union Pac. R.R. Co.*, No. C 05-04059 JSW, 2006 WL 193856, at *2 (N.D. Cal. Jan. 23, 2006) (citation omitted). "To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Williams*, 157 F. Supp. 2d at 1108.

I find that Uber has made a strong showing of witness inconvenience here. Uber has set

---

[9] Uber also notes that although Doe has not sued Jaquez, "he is likely to be pulled into this litigation as an indispensable party." Mot. at 8; *see also* Declaration of Tracey Angelopoulos in Support of Uber's Motion ("Angelopoulos Decl.") (Dkt. No. 21-2) ¶ 4(B) ("[Jaquez] resides in Minnesota and is expected to testify as to the events and allegations that Plaintiff alleges occurred.").

[10] *See Royal Queentex Enterprises v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000) (explaining that in order to demonstrate witness inconvenience, the party moving for transfer "must provide information as to the identity and location of its third party witnesses, the content of their testimony, and indicate why their testimony is relevant to this case").

8

forth a declaration identifying key non-party witnesses, including Jaquez, Doe's friends who were with her the night of the alleged assault, employees and patrons of the two bars Doe visited the night of her alleged assault, Doe's treating physicians, and the police officers to whom Doe reported the assault. All of these witnesses reside in Minnesota, are expected to testify at trial regarding the underlying assault and battery, and would be inconvenienced by having to testify in California. *See* Mot at 8-9; Angelopoulos Decl. ¶ 5(A)-(G).

Without identifying any specific witnesses who reside in this District, Doe asserts that "it is reasonable to believe there will be both party witnesses and nonparty witnesses, in both California and Minnesota," and argues that California "is at least as suitable a venue" as Minnesota, and transferring this action "would only shift the inconvenience from some witnesses to others." Oppo. at 8-9. While, Doe acknowledges that "[t]he witnesses who would purportedly be inconvenienced or unavailable are mostly [her] damages witnesses," she downplays the significance of that admission by arguing that at least her two friends have agreed to testify at trial in California. *Id*. at 7; Peters Decl. ¶ 3. However, *all* of these non-party "damages witnesses" are located in Minnesota and would be needlessly inconvenienced by travelling 2,000 miles from their district of residence for a trial in California.

In addition, not all of the important witnesses can be considered "Doe's." Jaquez will be a key witness. In addition, the employees and patrons of the bar and the police officers may have testimony that could be considered favorable or damaging to Doe's case, depending upon how the facts develop. While these witnesses could be deposed in Minnesota, minimizing the inconvenience, as discussed below Uber will be hampered in its defense of this case by not being able to subpoena critical witnesses to testify at trial.

Finally, it would be cheaper and more efficient to litigate this case in Minnesota where the overwhelming majority of the witnesses identified by the parties live. *See e.g.*, *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) ("Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify."). On balance, Minnesota is as a more convenient forum for the witnesses and this factor strongly supports transfer.

9

### D. Ease of Access to the Evidence

Under this factor, "the Court must determine how transferring the case could affect the parties' ability to litigate the matter fairly and conveniently, which includes evaluating how transfer could affect both sides' ability to bring forth evidence and witnesses." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. 12-4407, 2013 WL 120185, at *4 (N.D. Cal. Jan. 8, 2013). Uber contends that "the pertinent records and witnesses will be outside the one hundred mile jurisdiction of this Court pursuant to Rule 45(c) . . . and cannot be compelled by process."[11] Mot. at 9. Therefore, Uber argues, "if there are any unwilling witnesses to the alleged events, [Uber] will be at a severe disadvantage and may not be able to properly defend this action, which would be unduly prejudicial." *Id*.

Doe, relying on statements made by Uber in prior litigation, asserts that Uber's "corporate witnesses and evidence are located in California." Oppo. at 3; *see* RJN ¶ 4 & Ex. 1. Specifically, she relies on a motion to dismiss or transfer to the Northern District filed by Uber in *Yucesoy v. Uber Technologies, Inc.*, No. 15-cv-0262-EMC, 2014 WL 10435096 (N.D. Cal. Oct. 28, 2014), in which Uber stated that "the majority of [Uber's] corporate witnesses and evidence is located in California." Oppo. at 3; Declaration of Sara M. Peters in Opposition to Uber's Motion ("Peters Decl.") (Dkt. No. 29-1) ¶ 3. The plaintiffs in *Yucesoy* brought claims against Uber and two of its corporate officers—both of whom resided in the Northern District—for Uber's alleged misclassification of drivers as independent contractors. Representations made three years ago in litigation wholly unrelated to this case have little bearing on where the evidence and witness are located in this tort action. Here, the percipient witnesses and evidence regarding Doe's alleged assault and battery, medical treatment, and damages are located in Minnesota, where Doe lives and the alleged assault occurred. While some Uber party-witnesses may well reside in this District, their testimony will only be relevant at trial if Doe is able to prove her underlying battery and assault claims.

---

[11] Federal Rule of Civil Procedure 45(c)(1)(A) provides that "[a] subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."

10

As for compelling witness attendance, Doe argues that her two friends and treating physicians will be made available for deposition and that her two friends have "verbally agreed" to come to trial in California. Oppo. at 3; Peters Decl. ¶ 3. Doe also points out that all witnesses can "be deposed where they reside," suggests that if any witnesses are unavailable for trial in California then "the parties can present videotaped or videoconference testimony," and seems to imply that the critical witnesses would be ones she "would want to call a trial" and presumably who would voluntarily comply. Oppo. at 7-8.

Doe ignores the fact, discussed above, that many of the key fact witnesses are not necessarily hers and may want to testify in favor of Uber. These critical witnesses may not agree to appear in the Northern District and cannot be subpoenaed to testify at a trial here. Moreover, Doe's arguments regarding the logistics of facilitating witness depositions and attendance underscore the significant disparity in convenience between this forum and Minnesota – where the vast majority of the disputed evidence and witnesses are located.

In sum, because the critical evidence regarding the assault, battery, and damages suffered by plaintiff is located in Minnesota, and because witnesses essential to this case reside in Minnesota and are not subject to this Court's subpoena power, I find that this factor weighs strongly in favor of transfer.

### E. Familiarity of Each Forum with the Applicable Law

Where the defendant seeks to transfer venue pursuant to section 1404(a), the transferee district court applies the state law of the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Federal courts routinely apply the laws of other states, and "other federal courts are fully capable of applying California law." *Holliday v. Lifestyle Lift, Inc.*, No. 09-4995, 2010 WL 3910143, at *8 (N.D. Cal. Oct. 5, 2010).

Here, the parties disagree about which state's law governs this dispute. Doe argues that California law applies to "a number of substantive issues applicable to this case," while Uber contends that Minnesota law governs. *Compare* Oppo. at 6 *with* Reply at 7-8. At this juncture, it is unclear which state's substantive law will govern, and I need not resolve that question. Even if California law governs, a Minnesota district court would be equally capable of applying California

11

law as this Court. Moreover, the California laws that might govern Doe's claims are "not especially complex or specialized," and it appears that "resolution of this action will depend less on expertise in the law and more on the court's fact-finding function." *See Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09CV2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (explaining that "[w]hile complex or specialized law of the state of the transferor court weighs against transfer, California law is not especially complex or specialized" and "federal courts are adept at applying various [California] state law claims of unfair competition and deceptive trade practices"). Therefore, this factor is neutral.

### F. Local Interest in the Controversy

The localized interest factor requires the court to consider the current and transferee forums' interests "in having localized controversies decided at home." *Decker Coal*, 805 F.2d at 843 (citation omitted). Uber argues that Minnesota has a stronger local interest in hearing this case because Doe's complaint is premised on "the alleged assault of [a] Minnesota resident by another Minnesota resident" which "should be decided by members of [Doe's] community." Mot. at 10. Uber further contends that "all of the alleged advertising that [Doe] purportedly relied upon, serving as the basis for her claims of fraud, concealment and false advertising, presumably occurred exclusively in Minnesota." Reply at 7. Doe counters that "the California public has an interest in resolving cases that arise from California corporations' use of new technology in California." Oppo. at 6. Doe further alleges that because Uber's wrongful conduct at issue (*i.e.*, the alleged fraud, deceptive marketing, and hiring) took place at Uber's San Francisco headquarters, California "has a legitimate interest in addressing that conduct to protect both California and foreign residents." *Id*. I find that this factor favors transfer.

While the California has some interest in seeing this case decided here, as Uber is headquartered in San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise to Doe's suit occurred there. Doe's recovery in this action depends on proving the alleged sexual assault and battery, which will require testimony from Minnesota witnesses and evidence located in Minnesota. Furthermore, Minnesota has a greater interest in protecting a Minnesota citizen against assault and battery than California does. Finally, while California

1 undoubtedly has significant interests in the conduct of corporations headquartered here, Minnesota
2 has a comparable interest in the conduct of corporations operating in Minnesota. Accordingly,
3 this factor strongly favors transfer.

### G. Relative Court Congestion

Courts may use the average time between filing and disposition or trial as a measure for court congestion. *See Ctr. for Biological Diversity v. Lubchenco*, No. C-09-4087 EDL, 2009 WL 4545169, at *3 (N.D. Cal. Nov. 30, 2009). Doe argues that this factor weighs against transfer because the median time from filing to trial is 5.2 months longer in the District of Minnesota (average time to trial of 30 months) than in the Northern District (average time to trial of 24.8 months). *See* Angelopoulos Decl., Ex. A. While this factor weighs slightly against transfer, it has only a minimal effect on the balance in this case. *See e.g.*, *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *12 (N.D. Cal. Feb. 3, 2017) (noting that "congestion is only a 'minor factor' in the transfer analysis and 'this factor alone cannot control the overall balance of this Court's decision' on a motion to transfer," and finding that a six-month difference in time to trial weighed "slightly against transfer") (citation omitted).

## II. SUMMARY OF FACTORS

A majority of the relevant factors favor transfer of this action to the District of Minnesota. Doe's choice of forum merits some deference, but that minimal deference is outweighed by the fact that this District is significantly less convenient for the witnesses. The majority of the evidence and key third-party witnesses relevant to the disputed facts at issue are located in Minnesota, outside this Court's subpoena power. Finally, Minnesota's local interest in deciding this controversy is substantially stronger than California's. The remaining venue factors are either neutral or irrelevant. On balance, Uber has met its burden of demonstrating that this case should be transferred "for the convenience of the parties and witnesses" and "in the interest of justice" under 28 U.S.C. § 1404(a).

**CONCLUSION**

Uber's motion to transfer venue to the District of Minnesota is GRANTED.

**IT IS SO ORDERED.**

Dated: May 31, 2017



William H. Orrick
United States District Judge